Omitting only the introductory paragraph and the formal order, we set forth in haec verba the trial Court's Final Decree:
 [Facts]
"Virginia E. McCaleb was the mother of six children: Robert Leon McCaleb, Sallie McCaleb Drake, Josephine McCaleb Balch, Joseph Edmond McCaleb, John William McCaleb and Shelby Blaine McCaleb. On May 21, 1942, Mrs. McCaleb executed six (6) deeds conveying to each of her children a life interest in specified separate parcels of property.
"The operative language in each of the deeds was virtually identical, the only variation being in reference to the sex of the named grantee. This controversy centers upon the interpretation of the habendum clause in these deeds, and in particular, the effect of the habendum in the deed to Robert Leon McCaleb which reads as follows:
 "`To Have and To Hold unto the said Robert Leon McCaleb, together with all and singular, the rights, privileges, tenements, appurtenances and improvements thereunto belonging, for and during the term of his natural life, with remainder after his death in fee simple to his surviving descendants per stirpes. Provided, however, if at the time of the death of my said son, Robert Leon McCaleb, he shall not leave surviving any descendants, the remainder estate in and to said lands shall rest in equal shares in such of my children as may be living at such time, and the legal descendants per stirpes of such of my children who may have previously died, leaving surviving legal descendants.'
"In June of 1943, Mrs. McCaleb died, and later on April 5, 1946, Robert Leon McCaleb legally adopted the plaintiff in this case, Mary Lou McCaleb Brown. R.L. McCaleb died on March 25, 1974, and the plaintiff sought a declaratory judgment regarding her rights in the property conveyed to her adoptive father by Virginia E. McCaleb. Joseph Edmond McCaleb, a son of Virginia McCaleb and an original defendant, died on February 23, 1975, without descendants, and the plaintiff amended her complaint to seek declaration of her rights in property similarly conveyed to Joseph Edmond McCaleb as well. Defendants answered and counter-claimed alleging that only the named defendants came within the terms of the remainder provision in the deeds at issue and sought a declaratory judgment in their favor.
 [Issue]
"The present posture of this case sets forth a single issue for resolution by this Court. Is Mary Lou McCaleb Brown, adopted daughter of Robert Leon McCaleb, within the class of persons described in the McCaleb deeds as `his surviving descendants' and as `the legal descendants' of one of Virginia McCaleb's children?
"In order to decide the question posed here, the Court is faced with the problem of framing a legal definition of the term `descendants' as used in the deeds involved. Counsel for the parties have provided the Court with able and helpful briefs, but neither the briefs nor the Court's own research has disclosed a case in which any Alabama appellate court has undertaken to define the term `descendant' as it applies to an adopted child. Therefore it appears that *Page 487 
this Court must formulate its own definition of the key term in accordance with its understanding of Alabama law.
 [Decision]
"As an aid to this decision, counsel have discussed in brief and in argument the statutory and case law in Alabama and in other jurisdictions with regard to an adopted child's ability to inherit property from adoptive parents and adoptive collateral relatives. On the subject of inheritance from adoptive collateral relatives, the Alabama Supreme Court has clearly stated that such a result is not to be reached, Gamblev. Cloud, 263 Ala. 336, 82 So.2d 526 (1956) [1955]. AlthoughGamble v. Cloud did help to produce certain amendatory legislation, that legislation did not affect the ruling in regard to inheritance from adoptive collaterals.
"Alabama case law dealing with the rights of inheritance of adopted children shows a consistent pattern of restrictive interpretation of the Alabama adoption statutes as they relate to inheritance. Since those provisions are in derogation of the common law, see, Peck v. Green, 266 Ala. 321, 96 So.2d 169
(1956); Hamilton v. Smith, 264 Ala. 199, 86 So.2d 283 (1956),Gamble v. Cloud, 263 Ala. 336, 82 So.2d 526 (1955); Franklin v.White, 263 Ala. 223, 82 So.2d 247 (1955). But it is undisputed that a child who has been adopted in a valid legal procedure is entitled to inherit from its adoptive parents, Ala. Code Tit. 27, § 5.
"If the Court were faced here with a problem of whether an adopted child takes by intestacy or under the will of a collateral who died prior to the adoption or even by intestacy or under the will of an adoptive parent, the question presented by this case would perhaps be less difficult to resolve. However, the instruments with which the Court must deal in this instance are deeds rather than wills. The legal device employed here was an inter vivos conveyance of a life estate with a contingent remainder in the `descendants' of Virginia McCaleb's children who had died prior to the vesting of the fee simple estate.
"In other words, the short time span between the execution of the series of deeds and the death of Virginia McCaleb naturally tends to suggest an `inheritance' by collateral kin from Virginia McCaleb. But in fact, in legal contemplation, no inheritance has or will occur as a result of these transactions. There is no inheritance from Virginia McCaleb since all her interest in the real property involved here was conveyed away before her death, and there is no inheritance from any of the six McCaleb children since none of them owned, by virtue of the deeds, any estate in land which would have been transmissible at death.
"Although the resolution of the instant controversy does not rest directly upon the question of whether plaintiff, Mary Lou McCaleb Brown, could have inherited property from Robert Leon McCaleb, the decisive factor is the legal relationship between plaintiff and Robert Leon McCaleb. There is no dispute about the validity of plaintiff's adoption although counsel disagree as to whether the Court should look to the 1931 statute or the present statute as amended in 1957 and 1959. The Court is of the opinion that the same result will obtain regardless of which statute is used.
"Ala. Code, Tit. 27, § 5, outlines among other things the rights of inheritance of an adopted child. As noted above, the Court has concluded that this case turns on the interpretation of a class description found in a deed rather than on an application of the laws of inheritance, and nowhere in either of the variations on the adoption statute has the Legislature declared that an adopted child shall or shall not be included within the legal definition of the `descendants' of the adoptive parents. It is, however, instructive that the Alabama Legislature has stated:
 "`For the purposes of inheritance of property under the laws of descent and distribution an adopted child, whether now or hereafter adopted under the laws of Alabama or some other jurisdiction, shall bear the same relation to his adopting parents and their natural and adopted *Page 488 
children as if he were the natural child of such parents.'"
Ala. Code of 1940, Tit. 27, § 5 (1958 Recomp. and 1973 Supp).
"The terms `descendant' and `legal descendant' are not one of precise legal definition; they are apparently undefined in Alabama case law. Other jurisdictions, however, have arrived at determinations of whether adopted children are `descendants' of their adoptive parents and of their other adoptive relatives. The results reached and the interpretive tools used have varied from state to state.
"Black's Law Dictionary, in dealing with the term `descendant' lists the following as a proper definition: `One on whom the law has cast the property by descent.' This court finds such an interpretation of the phrases `descendants' and `legal descendants' to be correct and suitable in the case at bar.
"Therefore, the Court concludes that Mary Lou McCaleb Brown should be included within the designated class of `descendants' and `legal descendants' of Robert Leon McCaleb since, for purposes of intestate succession to property owned in fee by Robert Leon McCaleb, plaintiff is regarded as his child or `descendant.'
"We are urged to consider the intent of the grantor by the defendants. The law of descents in 1942 would have allowed an adopted child to be an heir, and the property of Robert Leon McCaleb would have descended to Mary Lou McCaleb in that year had he died and had she been adopted. She would have been as much a descendant then as any subsequent time. Virginia E. McCaleb left no signs to indicate whether or not she ever considered an adopted descendent. If we allow the luxury of speculation about intent, it is as reasonable to argue her love for an adopted child would have been as great as for a child of her blood. An excellent case can be made she would have included adopted persons if she had specifically expressed herself. She certainly could have excluded adoptees with a word or two. The court is unwilling to base its opinion upon the rambling arguments of speculation. For all we know she intended descendants to include adopted descendants."
 Conclusion
We have tested the trial Court's decree against each of the contentions urged by the appellants; and, as supplemented by our discussion below, we adopt both the rationale and holding of the final decree from which this appeal was taken. We affirm.
Initially, we deem it appropriate to emphasize, as did the trial Judge, that the only legislative expression in this general area (Title 27, § 5, Code) is not dispositive of the issue here presented. In addition to that portion of the adoption statute quoted in the trial Court's decree, the following language appears: ". . . and the child shall be invested with every legal right, privilege, obligation, and relation in respect to education, maintenance and the rights of inheritance to real estate, and to the distribution of personal estate on the death of such adopting parent or parents as if born to them in lawful wedlock" — all of which language speaks in terms of "rights of inheritance" and "inheritance of property under the laws of descent and distribution."
But this is not an "inheritance" case, argues the appellants and thus the statute is not controlling. We agree that it is not controlling; but we also agree that the language of the statute is "instructive," and that this expression of public policy with respect to the rights of an adopted child "[f]or the purposes of inheritance" should be consistently applied in the context of inter vivos gifts of real property unless a contrary intent is clearly expressed.
Rather than electing to dispose of her property by will or by the laws of intestacy, Virginia McCaleb, during her lifetime, granted a life estate to her son, Robert, "with remainder to his surviving descendants." Had she created this contingent interest by will, the adopted child of Robert would have taken as a "descendant" through the clear mandate of the express terms of the statute. Given the premise *Page 489 
that the grant did not by its language expressly exclude from the term "descendant" an adopted child (see Whitfield v.Matthews, Ala., 334 So.2d 876 (1976)), we are constrained to hold that a different result from that in the case of a will should not obtain; and, indeed, to hold otherwise would only frustrate the overall policy of the adoption statute to treat adopted children in all respects as natural children unless a contrary meaning is clearly expressed.
In In re Coe, 42 N.J. 485, 201 A.2d 571 (1964), the Supreme Court of New Jersey, under parallel circumstances, observed:
 "[I]t is not important whether the adoption statute directly controls the interpretation of instruments. The important point is that the statute reflects the feeling and attitude of the average man and hence its policy should be followed unless the benefactor explicitly reveals a contrary purpose."[1]
Counsel for appellants contend that to allow Mrs. Brown to inherit would be contrary to the intentions of Virginia McCaleb since she never knew the adopted daughter. This argument is not persuasive, particularly in view of the fact that this was a class gift. As stated In re Holden's Trust, 207 Minn. 211,291 N.W. 104 (1940):
 "The least persuasive of all reasons given for the rule is that an adopted child should not be permitted to take because he was unknown to the testator. In many cases where provision is made for a class such as heirs or issue, the members of the class are unknown to the testator for the very simple reason that membership in the class is to be determined in the future and after his death. No one has ever supposed that one answering the description of those who are to take was to be excluded because he was unknown to the testator."
The appellants have cited cases from many jurisdictions. The statutory provisions in these jurisdictions are inapposite to the issue here presented. In some instances, the statutory language clearly restricts the rights of adopted children from inheriting collaterally. See, e.g., In re Leask, 197 N.Y. 193,90 N.E. 652 (1910). In other instances, the express terms of the statute indicate that the legislature intended to limit the right of the adopted child to inherit from the adopted parents only. See, e.g., Jenkins v. Jenkins, 64 N.H. 407, 14 A. 557
(1888). See, generally, 9 Ill.L.Rev. 149.
One state which does have a statute similar in nature to our own is Wyoming, and their Supreme Court has held ". . . the term `descendant' includes an adopted child when considered in connection with the adoption statute." In re Cadwell's Estate,186 P. 499 (Wyo. 1920).
Therefore, we hold consistent with the adoption statute which creates a parent-child relationship between the adopter and the adoptee, that the latter is presumptively within the designation of the adopter's descendants unless the context or circumstances clearly establish a contrary intention.
The judgment of the trial Court is affirmed.
AFFIRMED.
All the Justices concur.
[1] For an excellent discussion of this problem and a compilation of cases from other jurisdictions, see In re Estate of Tafel,449 Pa. 442, 296 A.2d 797 (1972).